**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SUSAN JUANITA OWEN-BROOKS, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>BETTER HOMES AND GARDENS REAL ESTATE, LLC and NATIVE AMERICAN GROUP, LLC D/B/A BETTER HOMES AND GARDENS REAL ESTATE NATIVE AMERICAN GROUP,<br>Defendants. | Civil Action No.: 25-15801<br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is the motion of defendants Better Homes and Gardens Real Estate, LLC ("BHGRE") and Native American Group, LLC, d/b/a Better Homes and Gardens Real Estate Native American Group ("NAG", and collectively with BHGRE, "Defendants") to dismiss plaintiff Susan Juanita Owen-Brooks' ("Plaintiff") Complaint, ECF No. 1("Compl."), pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 16 ("Br."). Plaintiff filed an opposition, ECF No. 18 ("Opp."), and Defendants replied. ECF No. 21 ("Reply"). After the motion was submitted, the parties provided supplemental authority for the Court's consideration. ECF Nos. 23-30. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion to dismiss is denied.

# I. BACKGROUND[1]

## A. Factual History

BHGRE is a limited liability company, which operates as a national real estate franchise system and directs, controls, and profits from the marketing and business activities of its franchisees and subsidiaries throughout the United States, including New Jersey. Compl. ¶ 11. NAG is Virginia limited liability company, which operates under the Better Homes and Gardens brand, name, and franchise system. *Id*. ¶ 12.[2] NAG directs, markets and provides its business activities throughout the United States and under the oversight of its parent company, BHGRE. *Id*. Agents from NAG allegedly hold themselves out as agents who sell real estate under the BHGRE brand, and the NAG website displays the BHGRE logo and branding. *Id.* ¶¶ 13-14.

According to Plaintiff, Defendant BHGRE provides training to their agents through their integrated platform, including specific training on how to market their services. Compl. ¶ 17. Plaintiff alleges that under Defendants' business model and training protocols, Defendants' agents call and text consumers in an attempt to generate business and profits for the entirety of the Better Homes and Gardens system, including to customers who are registered on the National Do Not Call Registry and who have not given Defendants nor any of their agents consent to contact them via text message on their residential telephone numbers. *Id.* ¶¶ 19-20. Plaintiff argues that BHGRE received a substantial commission and profits directly from the successful transactions of each of

---

[1] For the purposes of this motion to dismiss, the Court accepts the Complaint's well-pled factual allegations as true, construes them in the light most favorable to Plaintiff, and draws all reasonable inferences in Plaintiff's favor. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022).

[2] Plaintiff alleged in her Complaint that NAG was a wholly owned subsidiary of BHGRE. Comp. ¶ 4. She later conceded in her Opposition to the Motion to Dismiss that she was incorrect about NAG's ownership, but reaffirmed her assertion that NAG was a franchisee of BHGRE. *See* Opp. at 27.

their agents, including transactions that generate their business by violating the Telephone Consumer Protection Act ("TPCA") and the targeting of consumers on the National Do Not Call Registry. *Id.* ¶ 21.

Plaintiff alleges that her residential telephone number ending in 8409 (the "8409 number") had been registered with the National Do Not Call Registry since April 23, 2013. Compl. ¶ 37. Starting in or around March 2025, Defendants allegedly began contacting Plaintiff with unsolicited telemarketing text messages to the 8409 number. *Id.* ¶ 22. Plaintiff asserts that text messages were sent on, including but not limited to, March 13, 2025; March 14, 2025; and May 12, 2025. *Id.* The text messages were allegedly from "Marissa from Better Homes and Gardens Real Estate NAGR" and "Barry's assistant with Better Homes and Gardens NAGR." *Id.* ¶ 23. The relevant text messages encouraged future purchase or investment in property, goods, and services, and advertised Defendants' various discounts and promotions. *Id.* ¶¶ 29, 31.

Plaintiff avers that she received text messages purporting to be from agents of BHGRE from multiple phone numbers. *Id.* ¶ 22. Specifically, the messages originated from at least telephone numbers 757-255-7462 and 757-574-9095, numbers which Plaintiff claims are owned and operated by Defendants or on behalf of Defendants. *Id.* ¶ 39.

Plaintiff argues that Defendants' unsolicited text messages caused her actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. *Id.* ¶ 45. She estimated that she spent fifteen to thirty seconds reviewing each of Defendants' unwanted messages, and she alleged that each time she received a text message, she had to stop what she was doing to either retrieve her phone and/or look down at the phone to review the message. *Id.* ¶ 46.

### B. Procedural History

On September 18, 2025, Plaintiff filed her Complaint in the United States District Court for the District of New Jersey. *See generally* Compl. Plaintiff brings this case as a Class Action pursuant to Fed. R. Civ. P. 23, on behalf of herself and others who similarly were on the Do Not Call registry and received similar text messages without consent in the last twelve months. Compl. ¶ 47-48. In the Complaint, she asserts one count for violations of 47 U.S.C. § 227(c), the Telephone Consumer Protection Act ("TCPA"), and 47 C.F.R. § 64.1200, the statute's implementing regulations. Compl. ¶¶ 58-65. Defendants moved to dismiss the Complaint. ECF No. 16.

## II. <u>LEGAL STANDARD</u>

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that contains "a formulaic recitation of the elements of a cause of action" supported by mere conclusory statements or offers "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (citation omitted). In evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008). Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. DISCUSSION

To make out a claim under § 227(c)(5) of the TCPA, a plaintiff must plausibly allege "(1) receipt of more than one telephone call within any 12-month period; (2) by or on behalf of the same entity; . . . (3) in violation of the regulations promulgated by the [Federal Communications Commission]." *Bradshaw v. CHW Grp., Inc.*, 763 F.Supp.3d 641, 649 (D.N.J., 2025) (quoting *Persichetti v. T-Mobile USA, Inc.*, 479 F. Supp. 3d 1333, 1339 (N.D. Ga. 2020)). The relevant implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

Defendants move to dismiss the Complaint on the grounds that (1) the text messages alleged in the Complaint do not constitute "calls" within the meaning of § 227(c)(5) of the TCPA; and (2) Plaintiff consented to contact from the Defendants. Br. at 5-10. Alternatively, Defendant requests that the Court dismiss the claims against Defendant BHGRE because Plaintiff failed to plead facts sufficient to support a plausible claim of vicarious liability. *Id.* at 10-4.

### A. Text Messages

Defendants argue that under section 227(c)(5), telephone calls do not constitute text messages. *Id.* at 6-8. Prior to the Supreme Court's watershed opinion in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the FCC interpreted the TCPA to include text messages. *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 at ¶ 165 (2003). Pursuant to the *Chevron* doctrine, the Third Circuit deferred to that interpretation. *See Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 274 n.2 (3d Cir. 2013). After the Supreme Court overturned the *Chevron* doctrine in *Loper Bright*, Defendants argue that courts may no longer defer

to agency interpretations and must engage in independent statutory interpretation. Br. at 8. Thus, Defendants contend that without any deference to the FCC, the proper interpretation of the TCPA requires holding that text messages do not constitute calls under 227(c)(5). *Id.*

Even after *Loper Bright*, however, numerous district courts within the Third Circuit and beyond have conducted an independent statutory analysis and agree that section 227(c)(5) encompasses text messages, as well as phone calls. *See Pero v. Brown-Daub Chevrolet of Nazareth*, No. 25-7016, 2026 WL 1747214, at *5 (E.D. Pa. June 17, 2026) ("Considering the statutory language, the FCC regulations, and the decisions of an overwhelming majority of courts, we hold that a text message is a call for purposes of 47 U.S.C. § 227(c)"); *Newell v. Children's Dental Health Assocs.*, LLC, No. 25-5238, 2026 WL 927378, at *9 (E.D. Pa. Apr. 6, 2026) (same); *Rubin v. Staples, Inc.*, No. 25-15515, 2026 WL 881651, at *6 (D.N.J. Mar. 31, 2026) (same); *Cole v. C/T Install Am., LLC*, No.25-3531, 2026 WL 916582, at *1 n.1 (E.D. Pa. Mar. 23, 2026) (same); *Bradshaw v. CHW Grp., Inc.*, 763 F.Supp.3d 641, 651 n.5 (D.N.J. 2025) (same); *Zelma v. Wonder Grp. Inc.*, No. 25-3232, 2025 WL 2976546, at *3 (D.N.J. Oct. 22, 2025) (same); *see also, e.g.*, *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 637 (S.D.N.Y. 2025) ("The Court holds, in accord with a growing consensus of case law, that § 227(c) of the TCPA applies to text messages for multiple reasons"); *Mujahid v. Newity*, *LLC*, No. 25-8012, 2025 WL 3140725, at *2-3 (N.D. Ill. Nov. 10, 2025) ("[N]othing in the text, structure, or purpose of the TCPA suggests a distinction between an unsolicited voice call and an unsolicited written text message"); *Wilson v. MEDVIDI Inc.*, No. 25-03996, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025) (same).

This Court agrees with the weight of caselaw finding that the statutory text is best read to encompass text messages within the definition of "calls." When interpreting a statute, courts must begin with the "language of the statute itself," *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay*

*Found., Inc.*, 484 U.S. 49, 56 (1987) (citations omitted), considering the "ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cnty.,* 590 U.S. 644, 654 (2020); *see also Loper Bright*, 603 U.S. at 400 ("[E]very statute's meaning is fixed at the time of enactment" (citation omitted)). When the TCPA was enacted in 1991, the plain meaning of a "telephone call" was "'a communication made by telephone' without distinction between an oral or vocal communication." *Rubin,* 2026 WL 881651, at *6 (quoting *Wilson,* 811 F. Supp. 3d at 637). Since today, "there are numerous modes of communicating by telephone," "texting fits comfortably within the understood meaning of 'call.'" *Newell*, 2026 WL 927378 at *4.

The words of a statute must also be read "in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 576 U.S. 473, 486 (2015) (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp*., 529 U.S. 120, 133 (2000)). It is "undisputed" that a text message qualifies as a call within the context of 47 U.S.C. § 227(b)(1)(A)(iii), a parallel provision of the TCPA that prohibits automated telephone dialing systems. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), *as revised* (Feb. 9, 2016). Since "identical words used in different parts of the same statute are generally presumed to have the same meaning," *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 294 (3d Cir. 2013) (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005)), and "nothing indicates that Congress intended for the same term in § 227(c) to cover fewer modes of telephonic communications than that in § 227(b)," *Wilson,* 811 F. Supp. 3d at 640, this Court agrees that the terms should be read consistently throughout the statute to apply to both text messages and calls under § 227(c). Moreover, "[u]nderstanding calls to include texts under the TCPA is consistent with the statute's stated purpose: a consumer protection law designed to protect individuals' privacy." *Newell,* 2026 WL 927378 at *7. "The statute's text and context thus show that Congress, in enacting § 227(c), was focused on protecting

subscribers from telephone solicitations, not on any one form of such solicitations." *Wilson,* 811 F. Supp. 3d at 641. Accordingly, the Court finds that even after *Loper-Bright*, section 227(c) protects against unsolicited text messages. *See Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123 (9th Cir. 2026) (finding that a text message qualified as a call under the TCPA, "even in the absence of Chevron deference"); *Newell,* 2026 WL 927378 at *8 ("[W]hile we are not bound by nor deferential to the FCC's interpretation of the TCPA, we find its interpretation amply supported by the statute's text and purpose, as well as by the reasoning of numerous courts that have tackled this interpretive question").

**B. Consent**

Even if text messages are covered by §227(c)(5), Defendants argue that dismissal is warranted because Plaintiff consented to receive the relevant messages. Br. at 9. Specifically, they contend that she "consented to Defendants contacting her" by registering her phone number with the USHUD website and agreeing that "USHUD Cooperative and its affiliates, and real estate professionals may call/text [her] about [her] inquiry." *Id.* Since BHGRE was identified on the USHUD website as an affiliated brokerage, Defendants argue that her registration and consent on the website require dismissal of her claim. *Id.* In support of this claim, Defendants submitted a screenshot of the USHUD registration page, Def. Ex. A; a screenshot of Plaintiff's registration information, Def. Ex. B; and a screenshot of the USHUD cooperative homepage. Def. Ex. C.

Plaintiff's purported consent to receive messages does not provide grounds to dismiss the complaint. Consent is an affirmative defense in a TCPA claim. *See, e.g.*, *King v. Bon Charge*, 823 F. Supp. 3d 508, 525-26 (D. Del. 2025) (holding that consent is an affirmative defense in the TCPA context); *Zelma*, 2025 WL 2976546, at *3 (same); *Smith v. Pro Custom Solar LLC*, No. 19-20673, 2021 WL 141336 at *4 (D.N.J. Jan. 15, 2021) (same) (citing *Breda v. Cellco P'ship*, 934 F.3d 1,

4, n.4 (1st Cir. 2019); *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1065 (7th Cir. 2018); *Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2d Cir. 2018); *Van Patten v. Vertical Fitness Grp.*, LLC, 847 F.3d 1037, 1044 n.3 (9th Cir. 2017); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1304-05 (11th Cir. 2015))*;see also Evankavitch v. Green Tree Serv.*, LLC, 793 F.3d 355, 366 (3d Cir. 2015) (Defendant bears the burden of proving an exception to liability, relying on interpretations of the TCPA holding that consent is such an exception to liability).

"To prevail on a Rule 12(b)(6) motion to dismiss based on an affirmative defense, . . . a defendant must show that the defense is apparent on the face of the complaint and documents relied on in the complaint" *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (internal citations omitted). Here, Plaintiff unequivocally alleged that she never provided "either Defendant with her express written consent to be contacted." Compl. ¶ 33. Accepting that allegation as true, as is required at the motion to dismiss stage, *Phillips,* 515 F.3d at 231–34, Defendants' motion to dismiss on consent grounds is denied.[3]

[3] Further, "Defendant's evidentiary support for its contention that Plaintiff consented to receiving the emails at issue may not be considered by the Court because it is found in materials outside the pleadings." *Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040, 1046 (E.D. Wash. 2005). Here, defendants included three exhibits to support their claim that Plaintiff consented to receiving texts from BHGRE. This Court declines to consider this extrinsic evidence at the motion to dismiss phase. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990)). "Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim[.]" *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548 (3d Cir. 2002) (citation omitted). At no point in the Complaint did the Plaintiff reference the USHUD website, her registration with said website, or a consent agreement. It is therefore inappropriate for the Court to consider such evidence at this stage of the proceedings.

**C. Vicarious Liability**

Defendants argue in the alternative that the Court should dismiss the claim against BHGRE because Plaintiff failed to sufficiently plead vicarious liability, either under an agency relationship theory or a veil-piercing theory. Br. at 10.

It is well-established that "under federal common-law principles of agency, there is vicarious liability for TCPA violations." *Campbell-Ewald Co. v. Gomez*, 577 U.S. at 168 (Court had no reason to question the FCC's ruling that vicarious liability principles apply under the TCPA); *see also Jubb v. CHW Grp., Inc.*, No. 23-23382, 2025 WL 942961 at *5 (D.N.J. Mar. 28, 2025) ("Federal common law principles of vicarious liability are applicable where the plaintiff establishes an agency relationship between the defendant and a third-party caller"); *Cunningham v. Cap. Advance Sols., LLC*, No.17-13050, 2018 WL 6061405 at *6 (D.N.J. Nov. 20, 2018) (same); *City Select Auto Sales, Inc. v. David/Randall Assocs., Inc.,* 96 F. Supp. 3d 403, 419 (D.N.J. 2015) (same). "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 120 (3d Cir. 2013) (internal citations omitted). Under common-law principles of agency, vicarious liability attaches when an agent has actual authority or apparent authority to act on a defendant's behalf. *Id.* Most relevant here, actual authority exists when an agent "reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Id.* (citing Restatement (Third) of Agency § 2.01 (2006)).

Plaintiff adequately alleges that Defendant BHGRE authorized agents affiliated with Defendant NAG to send text messages to members of the proposed putative class. First, she alleges that Defendants provide "specific training on how to market their services," and that "under

Defendants' business model and training protocols, many of Defendants' agents engage in systematic calling and texting of consumers in an attempt to generate business and profits for the entire Better Homes and Gardens system." Compl. ¶ 19. Plaintiff included text messages in the body of her complaint which purported to be from "Marissa from Better Homes and Gardens Real Estate NAGR," "Marissa from Better Homes and Gardens Real Estate," and "Barry's assistant with Better Homes and Gardens NAGR"—allegations which lead to the reasonable conclusion that employees of NAGR believed that they were authorized to send solicitations on behalf of BHGRE. *Id.* ¶¶ 22-23. Plaintiff finally alleges that the information contained in the text messages advertises Defendants' various discounts and promotions, which she argues were sent to "promote their business and generate profits." *Id.* ¶ 31.

Although Defendants rightly argue that "the mere existence of a franchise relationship does not necessarily trigger" an agency relationship, Br. at 11 (quoting *McLaren v. UPS Store, Inc.*, No. 21-14424, 2025 WL 3238934, at *13 (D.N.J. Nov. 20, 2025)), courts in this district have indeed found that plaintiffs adequately plead the existence of an agency relationship where they allege that the franchisor provided manuals and training materials to the franchisees—much like Plaintiff pled here. *See Michalak v. ServPro Indus., Inc.*, No. 18-01727, 2019 WL 3562690, at *4 (D.N.J. Aug. 6, 2019); *eTeam, Inc v. Hilton Worldwide Holdings, Inc.*, No. 15-5057, 2017 WL 2539395, at *3-4 (D.N.J. June 12, 2017).

Importantly, courts recognize that "'without discovery it is impossible for plaintiffs to know the nature of an alleged relationship' between the purported principal and agent." *Smith v. Vision Solar LLC*, No.20-2185, 2020 WL 7230975 at *4 (E.D. Pa. Dec. 8, 2020) (quoting *Hodgin v. Parker Waichman LLP*, No. 14-733, 2015 WL 13022289, at *2 (N.D. Ohio Sept. 30, 2015)). Therefore, "[f]or a motion to dismiss, the Court may infer that actual authority exists based on

allegations that the defendant 'authorized [the telemarketers to] plac[e] telemarketing calls to potential clients' on the defendant's behalf and that the '[d]efendants were the ultimate beneficiaries' of those solicitations. *Jubb,* 2025 WL 942961 at *5 (citing *Smith v. Vision Solar LLC*, No. 20-2185, 2020 WL 7230975, at *3 (E.D. Pa. Dec. 8, 2020) (quoting *Cunningham*, 2018 WL 6061405, at *6)). Here, Plaintiff's allegations suffice to permit such an inference. *See Doyle v. GoHealth, LLC*, No.22-04291, 2023 WL 11900257 at *3 (D.N.J. Dec. 7, 2023) (Plaintiff adequately pled a theory of vicarious liability where agents identified themselves as employees of Defendant). Accordingly, Defendants' motion to dismiss BHGRE for failure to plead vicarious liability is denied.[4]

## IV. CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 21st day of August, 2026;

**ORDERED** that Defendant's Motion to Dismiss is **DENIED.**

**SO ORDERED**

*/s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**

[4] Because the Court finds that Plaintiff adequately pleaded vicarious liability under agency principles, it need not reach Defendants' veil-piercing arguments.